————————

Case No. 24-50449

————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

————————

————————

No. 24-50128
Consolidated with
No. 24-50449

————————

LEAGUE OF UNITED LATIN AMERICAN CITIZENS; SOUTHWEST VOTER REGISTRATION
EDUCATION PROJECT; MI FAMILIA VOTA; AMERICAN GI FORUM OF TEXAS; LA
UNION DEL PUEBLO ENTERO; MEXICAN AMERICAN BAR ASSOCIATION OF TEXAS;
TEXAS HISPANICS ORGANIZED FOR POLITICAL EDUCATION; WILLIAM C. VELASQUEZ
INSTITUTE; FIEL HOUSTON, INCORPORATED; TEXAS ASSOCIATION OF LATINO
ADMINISTRATORS AND SUPERINTENDENTS; EMELDA MENENDEZ; GILBERTO
MENENDEZ; JOSE OLIVARES; FLORINDA CHAVEZ; JOEY CARDENAS; PROYECTO
AZTECA; REFORM IMMIGRATION FOR TEXAS ALLIANCE; WORKERS DEFENSE
PROJECT; PAULITA SANCHEZ; JO ANN ACEVEDO; DAVID LOPEZ; DIANA MARTINEZ
ALEXANDER; JEANDRA ORTIZ,

*Plaintiffs – Appellants*

v.

GREG ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF TEXAS,

*Defendant – Appellee*

————————

UNITED STATES OF AMERICA,

*Plaintiff – Appellee*

v.

S<small>TATE OF</small> T<small>EXAS</small>; J<small>OHN</small> S<small>COTT</small>, <small>IN HIS</small> O<small>FFICIAL</small> C<small>APACITY AS</small> T<small>EXAS</small> S<small>ECRETARY OF</small> S<small>TATE</small>,

*Defendants*

_____

Appeal from the United States District Court for the
Western District of Texas, San Antonio Division

_____

**CONSOLIDATED BRIEF OF PLAINTIFFS-APPELLANTS**

_____

Nina Perales
M<small>EXICAN</small> A<small>MERICAN</small> L<small>EGAL</small> D<small>EFENSE</small>
 A<small>ND</small> E<small>DUCATIONAL</small> F<small>UND</small>, I<small>NC</small>. (MALDEF)
110 Broadway Street
Suite 300
San Antonio, TX 78205
Tel: (210) 224-5476
Fax: (210) 224-5382

*Counsel for Plaintiffs-Appellants*

# CERTIFICATE OF INTERESTED PERSONS

1.      In the district court, this case is captioned as *League of United Latin American Citizens, et al. v. Abbott, et al.*, No. 3:21-cv-259-DCG-JES-JVB (lead case).  In this Court, it is captioned as *League of United Latin American Citizens, et al. v. Greg Abbott, et al.*, No. 24-50128 consolidated with 24-50449.

2.      The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

3.      The undersigned counsel of record further certifies under Federal Rule of Civil Procedure 26.1 that no organizational plaintiff has any parent corporation and no publicly held corporation owns 10% or more of stock in any organizational plaintiff.

## *LULAC Plaintiffs-Appellants*

a.      League of United Latin American Citizens (LULAC)
b.      Southwest Voter Registration Education Project
c.      Mi Familia Vota
d.      American GI Forum of Texas
e.      La Union del Pueblo Entero
f.      Mexican American Bar Association of Texas
g.      Texas Hispanics Organized for Political Education
h.      William C. Velasquez Institute
i.      FIEL Houston, Inc.
j.      Texas Association of Latino Administrators and Superintendents
k.      Emelda Menendez
l.      Gilberto Menendez

m.    Jose Olivares
n.    Florinda Chavez
o.    Proyecto Azteca
p.    Reform Immigration for Texas Alliance
q.    Workers Defense Project
r.    Paulita Sanchez
s.    Jo Ann Acevedo
t.    David Lopez
u.    Diana Martinez Alexander
v.    Jeandra Ortiz

*The following attorneys have appeared on behalf of the LULAC Plaintiffs-Appellants either before this Court or in the District Court and are currently counsel in this case:*

Nina Perales
Fatima L. Menendez
Julia R. Longoria
MEXICAN AMERICAN LEGAL DEFENSE & EDUCATIONAL FUND
(MALDEF)
110 Broadway, Suite 300
San Antonio, TX 78205
(210) 224-5476

Denise Hulett
MALDEF
1512 14th Street
Sacramento, CA 95814
(916) 444-3031

### ***Brooks Plaintiffs-Appellees***

a.    Roy Charles Brooks
g.    Felipe Gutierrez
h.    Phyllis Goines
i.    Eva Bonilla
j.    Clara Faulkner
k.    Deborah Spell
b.    Sandra M. Puente
c.    Jose R. Reyes

d.    Shirley Anna Fleming
e.    Louie Minor, Jr.
f.    Norma Cavazos
l.    Martin Saenz
m.    Lydia Alcalan

*The following attorneys have appeared on behalf of the Brooks Plaintiffs-Appellees either before this Court or in the District Court and are currently counsel in this case:*

Chad W. Dunn
BRAZIL & DUNN
4407 Bee Caves Road, Building 1, Suite 111
Austin, TX 78746
(512) 717-9822

Mark P. Gaber
MARK P. GABER PLLC
PO Box 34481
Washington, DC 20043
(715) 482-4066

Jesse Gaines
P.O. Box 50093
Fort Worth, TX 76103
(817) 714-9988

Molly Elizabeth Danahy
P.O. Box 26277
Baltimore, MD 21211
(208) 301-1202

Sonni Waknin
10300 Venice Blvd. Apt 204
Culver City, CA 90232
(732) 610-1283

## *Bacy* Plaintiffs-Appellees

a.  Akilah Bacy
b.  Orlando Flores
c.  Marilena Garza
d.  Cecilia Gonzales
e.  Agustin Loredo
f.  Cinia Montoya
g.  Ana Ramon
h.  Jana Lynne Sanchez
i.  Jerry Shafer
j.  Debbie Lynn Solis
k.  Angel Ulloa
l.  Mary Uribe
m.  Luz Moreno

*The following attorneys have appeared on behalf of the Bacy Plaintiffs-Appellees either before this Court or in the District Court and are currently counsel in this case:*

David R. Fox
Richard A. Medina
ELIAS LAW GROUP LLP
250 Massachusetts Ave., Suite 400
Washington, DC 20001
(202) 968-4490

Abha Khanna
ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0177

Max Renea Hicks
LAW OFFICE OF MAX RENEA HICKS
P.O. Box 303187
Austin, TX 78703
(512) 480-8231

## *Plaintiff-Appellee Mexican American Legislative Caucus (MALC)*

   a.   Mexican American Legislative Caucus
   b.   Texas State Representative Sergio Mora
   c.   Texas State Representative Bobbie Garza-Hernandez

*The following attorneys have appeared on behalf of MALC either before this Court or in the District Court and are currently counsel in this case:*

George (Tex) Quesada
Sean J. McCaffity
SOMMERMAN McCAFFITY, QUESADA & GEISLER, LLP
3811 Turtle Creek Blvd., Suite 1400
Dallas, TX 75219
(214) 720-0720

Joaquin Robert Gonzalez
Attorney at Law
1055 Sutton Dr.
San Antonio, TX 78228
210-663-6727

## *Plaintiff-Appellee Texas NAACP*

   a.   Texas State Conference of the NAACP

*The following attorneys have appeared on behalf of Plaintiff-Appellee Texas NAACP either before this Court or in the District Court and are currently counsel in this case:*

Lindsey B. Cohan
DECHERT LLP
515 Congress Avenue, Suite 1400
Austin, TX 78701
(512) 394-3027

Ezra D. Rosenberg
Pooja Chaudhuri

Sofia Fernandez Gold
Alexander S. Davis
LAWYERS COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street, NW, Suite 900
Washington, DC 20005
(202) 662-8345

Neil Steiner
Nicholas GershDECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3822

Gary L. Bledsoe
THE BLEDSOE LAW FIRM, PLLC
6633 Highway 290 East #208
Austin, TX 78723-1157
(512) 322-9992

Robert Stephen Notzon
LAW OFFICE OF ROBERT NOTZON
1502 West Avenue
Austin, TX 78701
(512) 474-7563

Anthony P. Ashton
Janette M. Louard
Anna K. Barnes
NAACP Office of General Counsel
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-5777

### *Fair Maps Plaintiffs-Appellees*

a.    Fair Maps Texas Action Committee
b.    OCA-Greater Houston
c.    Emgage
d.    Khanay Turner
e.    Angela Rainey

f.    Austin Ruiz
g.    Aya Eneli
h.    Sofia Sheikh
i.    Niloufar Hafizi
j.    Lakshmi Ramakrishnan
k.    Amatullah Contractor
l.    Deborah Chen
m.   Arthur Resa
n.    Sumita Ghosh
o.    Anand Krishnaswamy
p.    Peter Johnson
q.    Zahra Syed
r.    Chetan Reddy
s.    Sankar Muthukrishnan
t.    Christina Lu
u.    Jason Zhang
v.    Chris Leal
w.   Ashley Washington
x.    Sarika Maheshwari

*The following attorneys have appeared on behalf of the Fair Maps Plaintiffs-Appellees either before this Court or in the District Court and are currently counsel in this case:*

Hilary Harris Klein
Mitchell Brown
SOUTHERN COALITION FOR SOCIAL JUSTICE
5517 Durham Chapel Hill Blvd.
Durham, NC 27707
(919) 323-3380

Jerry Vattamala
Patrick Stegemoeller
Susana Lorenzo-Giguere
ASIAN AMERICAN LEGAL DEFENSE AND EDUCATION FUND
(AALDEF)
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932

Paul D. Brachman
Paul, Weiss, Rifkind, Wharton and Garrison
LLP
2001 K Street NW
Washington, DC 20006
(202) 223-7440

David A. Donatti
Ashley Harris
Thomas Paul Buser-Clancy
ACLU FOUNDATION OF TEXAS
P.O. Box 8306
Houston, TX 77288
(713) 942-8146

Yurij Rudensky
BRENNAN CENTER FOR JUSTICE AT NYU SCHOOL OF LAW
120 Broadway, Suite 1750
New York, NY 10271
(646) 292-8310

***Plaintiff-Appellee the United States of America***

*The following attorneys have appeared on behalf of Plaintiff-Appellee the United States of America either before this Court or in the District Court and are currently counsel in this case:*

R. Tamar Hagler
Timothy F. Mellett
Daniel J. Freeman
Michelle Rupp
Jacki L. Anderson
Jaywin S. Malhi
Holly F.B. Berlin
Attorneys, Voting Section
Civil Rights Division
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Ave NW
Washington, DC 20530
(202) 305-4355

## *Plaintiffs-AppelleeTrey Martinez Fisher*

a.      Trey Martinez Fisher

*The following attorneys have appeared on behalf of Plaintiffs-Appellees Escobar and Fisher either before this Court or in the District Court and are currently counsel in this case:*

Martin Anthony Golando
THE LAW OFFICE OF MARTIN GOLANDO, PLLC
2326 W. Magnolia
San Antonio, TX 78201
(210) 471-1185

## *Plaintiff-Intervenors*

a.      Sheila Jackson Lee
b.      Alexander Green
c.      Jasmine Crockett
d.      Eddie Bernice Johnson

*The following attorneys have appeared on behalf of Intervenor Plaintiffs-Appellees either in this Court or in the District Court and are currently counsel in this case:*

Gary L. Bledsoe
THE BLEDSOE LAW FIRM, PLLC
6633 Highway 290 East #208
Austin, TX 78723
(512) 322-9992

Nickolas A. Spencer
SPENCER & ASSOCIATES, PLLC
9100 Southwest Freeway, Suite 122
Houston, TX 77074
(713) 863-1409

## Defendants

a.  State of Texas
b.  Greg Abbott, in his official capacity as Governor of the State of Texas
c.  Jane Nelson, in her official capacity as Texas Secretary of State
d.  Jose A. Esparza, in his official capacity as Deputy Secretary of State of Texas
e.  Dan Patrick, in his official capacity as Lieutenant Governor and Presiding Officer of the Texas Senate

*The following attorneys have appeared on behalf of Defendants either before this Court or in the District Court and are currently counsel in this case:*

Ryan G. Kercher
Kathleen Hunker
Lanora Pettit
William W. Wassdorf
Lanora C. Pettit
J. Andrew MacKenzie
OFFICE OF THE TEXAS ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711
(512) 936-1414

## Non-Party Movants in the District Court – Texas House Members

a.  Ryan Guillen
b.  Brooks Landgraf
c.  John Lujan

*The following attorneys have appeared on behalf of Third-Party Movants-- Appellants either before this Court or in the district court and are currently counsel in this case:*

Adam K. Mortara
LAWFAIR LLC
125 S. Wacker Dr., Suite 300
Chicago, IL 60606
(773) 750-7154

Frank H. Chang
Taylor A.R. Meehan
CONSOVOY McCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209

### *Non-Party Movants in the District Court - Texas House Members and Employees*

a.    Rep. Todd Hunter
b.    Rep. Daniel Huberty
c.    Rep. Jacey Jetton
d.    Rep. J.M. Lozano
e.    Rep. Andrew Murr
f.    Rep. Adam Foltz
g.    Angie Flores
h.    Jay Dyer
i.    Colleen Garcia
j.    Mark Ball

*The following attorneys have appeared on behalf of Third-Party Movants-- Appellants either before this Court or in the district court and are currently counsel in this case:*

Patrick Strawbridge
Consovoy McCarthy, PLLC
Ten Post Office PMB #706
Boston, MA  020109

Taylor A.R. Meehan
Consovoy McCarthy PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423

### *Neutral Parties*

a.    Texas Legislative Council

*The following attorney has appeared on behalf of the Texas Legislative*

Council either before this Court or in the district court and are currently counsel in this case:

Alyssa Bixby-Lawson
OFFICE OF THE TEXAS ATTORNEY GENERAL
P.O. Box 12548
Austin, TX 78711
(210) 270-1118

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs-Appellants respectfully request oral argument. Oral argument in this statewide redistricting case, which raises legal issues that are developing in this and other circuit courts of appeal, will help illuminate the positions of the parties and aid the Court in reaching a decision.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ iii

STATEMENT REGARDING ORAL ARGUMENT ............................................. xv

TABLE OF CONTENTS.................................................................................... xvi

TABLE OF AUTHORITIES .............................................................................. xviii

STATEMENT OF JURISDICTION....................................................................... 1

STATEMENT OF ISSUES PRESENTED............................................................. 1

STATEMENT OF THE CASE.............................................................................. 2

I.      Factual Background ................................................................................... 2

A.      The Lawsuit ............................................................................................... 4

B.      Non-Party Legislators and Others Asserted the
        Legislative Privilege.................................................................................. 5

C.      The Discovery at Issue in this Appeal ...................................................... 7

        1.      Motions to Compel Documents .................................................... 7

        2.      Motions to Compel Deposition Testimony.................................. 8
                Of Legislators and Others

        3.      Depositions of NRRT and Adam Kincaid ................................... 9

        4.      The District Court's Orders Denying Discovery ....................... 11

        5.      Appeal ......................................................................................... 16

SUMMARY OF THE ARGUMENT ................................................................... 16

ARGUMENT ...................................................................................................... 18

I.      Standard of Review.............................................................................18

II.     Redistricting Cases and the Role of Evidence
        From the Legislative Process...........................................................18

III.    The District Court Erred in Expanding the Scope of the
        Legislative Privilege.........................................................................22

A.      The Scope of the Legislative Privilege.............................................23

B.      *Hughes* and *Bettencourt* do not Counsel Otherwise.....................25

C.      The District Court Erred by Expanding the
        Scope of the Legislative Privilege to Encompass
        Documents Never Shared with or Seen by
        Legislators or Legislative Staff.......................................................27

D.      The District Court Erred by Expanding the
        Scope of the Legislative Privilege to Encompass Fact-Based
        Information ......................................................................................29

E.      The District Court Erred by Expanding the Scope of
        The Legislative Privilege to Encompass Information
        provided by or to third parties, including legislative outsiders
        and members of the executive branch .............................................31

F.      The District Court Erred by Expanding the Scope of the
        Legislative Privilege to Encompass Information That Falls
        Outside the Period of Enactment ....................................................31

IV.     The District Court Erred in Ruling that the Legislative
        Privilege was not Waived.................................................................32

V.      The District Court Erred in Ruling That the Legislative
        Privilege Does not Yield..................................................................34

        CONCLUSION ................................................................................38

# TABLE OF AUTHORITIES

Page(s)

Cases

21CV259DCGJESJVB,
  2023 WL 6459801 (D.D.C. Oct. 4, 2023) ....................................... 9, 10

121 F.3d 729 (D.C. Cir. 1997) ................................................... 30

849 F.3d 615 (5th Cir. 2017) ............................................. Passim

*Abbott v. Perez*,
  585 U.S. 579 (2018) .................................................... 18, 19

*Bethune-Hill v. Virginia State Bd. of Elections*,
  114 F. Supp. 3d 323 (E.D. Va. 2015) .......................................... 35, 36

*Bogan v. Scott-Harris*,
  523 U.S. 44 (1998) ......................................................... 22, 26

*Bush v. Vera*,
  517 U.S. 952 (1994) ......................................................... 18

*Citizens Union of City of New York v. Attorney Gen. of New York*,
  269 F. Supp. 3d 124 ......................................................... 36

*Comm. for a Fair & Balanced Map*,
  2011 WL 4837508 ........................................................... 23

*Gravel v. United States*,
  408 U.S. 606 (1972) .................................................... 22, 25, 26

*Guillen v. LULAC*,
  142 S. Ct. 2773 (2022) ....................................................... 6

*In re Landry*,
  83 F.4th 300 (5th Cir. 2023) .................................................. 37

*Indus. Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co.*,
  953 F.2d 1004 (5th Cir. 1992) ................................................. 33

*La Union Del Pueblo Entero v. Abbott*,
   68 F.4th 228 (5th Cir. 2023) ........................................................ Passim
*La Union del Pueblo Entero v. Abbott*,
   93 F.4th 310 (5th Cir. 2024) ............................................. 1, 18, 26, 27

*League of United Latin Am. Citizens Abbott v. United States*,
   2022 WL 2713263 (5th Cir. May 20, 2022) ................................... 6, 24

*League of United Latin Am. Citizens v. Abbott*,
   2022 WL 1570858 (W.D. Tex. May 18, 2022) .................................. 24

*League of United Latin Am. Citizens v. Abbott*,
   2023 WL 4697109 (5th Cir. July 18, 2023) ....................................... 6

*League of Women Voters v. Lee*,
   340 F.R.D. 446 (N.D. Fla. 2021) ................................................... 36

*LULAC v. Perry*,
   548 U.S. 399 (2006) ....................................................................... 18

*Marylanders for Fair Representation, Inc. v. Schaefer*,
   144 F.R.D. 292 (D. Md. 1992) ................................................. 35, 36

*Nashville Student Org. Comm.*,
   123 F. Supp. 3d ............................................................................. 23

*Perez v. Abbott*,
   253 F. Supp. 3d 864 (W.D. Tex. 2017) ..................................... 18, 20

*Perez v. Abbott*,
   267 F. Supp. 3d 750 (W.D. Tex. 2017) .......................................... 19

*Rodriguez v. Pataki*,
   280 F. Supp. 2d 89 (S.D.N.Y. 2003) ............................................. 23

*Shelby County v. Holder*,
   570 U.S. 529 (2013) ....................................................................... 20

*Supreme Court of Virginia v. Consumers Union of U. S., Inc.*,
    446 U.S. 719 (1980) ........................................................................ 23

*Tenney v. Brandhove*,
    341 U.S. 367 (1951) ........................................................... 22, 26, 34

*Texas v. United States*,
    887 F. Supp. 2d 133 (D.D.C. 2012) ...................................... 18, 20, 21

*Thornburg v. Gingles*,
    478 U.S. 30 (1986) ........................................................................ 21

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991) ......................................................... 33

*United States v. Brewster*,
    408 U.S. 501 (1972) ........................................................... 22, 25, 34

*United States v. El Paso Co.*,
    682 F.2d 530 (5th Cir. 1982) ......................................................... 33

*United States v. Helstoski*,
    442 U.S. 477 (1979) ...................................................................... 25

*Veasey v. Abbott*,
    830 F.3d 216 (5th Cir. 2016) ......................................................... 20

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977) ...................................................................... 21

Statutes

28 U.S.C. § 1291 .............................................................................. 1
28 U.S.C. § 1331 .............................................................................. 1
28 U.S.C. § 1343(3) & (4) ................................................................. 1
28 U.S.C. §§ 2201 and 2202 ............................................................. 1
42 U.S.C. § 1983 .............................................................................. 1
52 U.S.C. § 10301 ............................................................................ 1

## Rules

Federal Rule of Appellate Procedure 32(a)(7)(B) ................................. 39
Federal Rule of Civil Procedure 26.1 ................................................. 3
Rule 32(a)(5) ..................................................................................... 39
Rule 32(a)(6) ..................................................................................... 39
Rule 32(f); and (2)............................................................................. 39
Rule 501 of the Federal Rules of Evidence ........................................ 24

## Other Authorities

*Developing A Speech or Debate Clause Framework for Redistricting Litigation*,
   89 N.Y.U. L. Rev. 238 (2014) ................................................... 35, 36
SB 4 ..................................................................................................... 3

## STATEMENT OF JURISDICTION

The district court had jurisdiction based on 28 U.S.C. § 1343(3) & (4) and 28 U.S.C. § 1331 for Plaintiffs' causes of action arising from 52 U.S.C. § 10301. The district court had jurisdiction based on 28 U.S.C. §§ 2201 and 2202 for Plaintiffs' claim for declaratory relief. The district court had jurisdiction based on 42 U.S.C. § 1983 and 28 U.S.C. § 1331 for Plaintiffs' claims under the Fourteenth Amendment to the U.S. Constitution. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because the orders of the district court denying discovery are appealable as collateral orders. *See La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 232 (5th Cir. 2023).

## ISSUES PRESENTED FOR REVIEW

1. Whether the district court erred in defining the scope of the legislative privilege without respect to the claims in the case, the document custodian, the time period of enactment, or whether a legislator had seen the information.

2. Whether the district court erred in ruling that the legislative privilege is not waived by sharing information with legislative outsiders or by failing to object to testimony on the same subject in previous depositions.

3. Whether the district court erred in ruling that the legislative privilege does not yield in light of the claims in this statewide redistricting case and after concluding that lawmakers were not transparent about their motives in enacting the challenged redistricting plans.

## STATEMENT OF THE CASE

### I.      Factual Background

Following the 2020 Census, Texas enacted new redistricting plans for State House, State Senate, congress and State Board of Education.  Over the preceding decade, the state had experienced substantial population growth and internal demographic changes, including a significant increase in the proportion of the population that is Latino.

The Legislature's new redistricting plans did not reflect Latino Texans' increased presence and political influence in the state.  Specifically, the redistricting plans failed to create new Latino majority districts where such districts were required, and the redistricting plans reduced Latino voter strength in a number of existing districts.

For example, the redistricting plans for the State House and congress reduced the number of Hispanic citizen voting age ("CVAP") majority districts when compared to the previous decade's plans.  The Latino population of Texas is sufficiently numerous and geographically compact to constitute the majority of the CVAP in at least five more districts in the State House plan and three more districts in the congressional plan.

The redistricting plans for State Senate and State Board of Education maintained the same number of districts that contain a majority Hispanic CVAP

when compared to the last decade's redistricting plans, but the Latino population of Texas is sufficiently numerous and geographically compact to comprise the majority of at least two additional Latino CVAP majority Senate districts and at least one more CVAP majority State Board of Education district, when compared to the enacted maps.

Throughout the redistricting process, legislators who sponsored the plans claimed simultaneously that they drew "race blind" maps and also that they preserved existing Black and Latino majority districts. *See, e.g.*, ROA.24-50449.858-861, .1223-1224, .1259. The legislators refused to explain how they ensured compliance with the State's obligations under the federal Voting Rights Act. *See, e.g.,* ROA.24-50449.858-861, .1255 ("I don't know what specifically they looked at nor will I go into that discussion."); *see also* ROA.24-50449.858-861, .1257-1258 (I don't want to get into my discussions with the attorney, I will say that I was told that I have complied with the Voting Rights Act, Section 2, by the map that you have before you, this plan.").

At the preliminary injunction stage of the case, the district court concluded that legislators were not transparent about their intent:

> As with the nonpublic events preceding passage of SB 4, . . . the legislative history suggests that supporters of the bill were less than forthright about their motivations. The redrawing of SD 10 . . . is not consistent with [lawmakers' articulated] principles such as core retention, geographic compactness, or combining communities of interest. Nor does the Court find it likely that the redrawing was

necessary for the sake of population equalization—it certainly is not true that the district itself "needed population," and Senator Huffman's smirk suggests that she may well have known as much.

ROA.24-50449.7064.

## A. The Lawsuit

Latino organizations and voters filed suit and alleged that all four statewide redistricting plans discriminate—purposefully and in effect—against Latino voters in violation of the federal Voting Rights Act and the U.S. Constitution.  ROA.24-50449.22943-23135.

The League of United Latin American Citizens, *et al.*[1], (collectively, "Plaintiffs") brought suit to challenge the statewide redistricting plans adopted in 2021 by the Texas Legislature. In their operative complaint, Plaintiffs allege, among other things, that the Texas Legislature enacted the Texas congressional redistricting plan with the intent to discriminate against Latinos; Plaintiffs further assert that under the totality of circumstances Latino voters have less opportunity to participate in the political process and to elect representatives of their choice.  ROA.24-50449.22943-23135.

---

[1] Plaintiffs the League of United Latin American Citizens, *et al.* ("Plaintiffs") are: League of United Latin American Citizens, Southwest Voter Registration Education Project, Mi Familia Vota, American Gi Forum, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, Texas Hispanics Organized for Political Education, William C. Velasquez Institute, Fiel Houston Inc., Texas Association of Latino Administrators And Superintendents, Proyecto Azteca, Reform Immigration for Texas Alliance, Workers Defense Project, Emelda Menendez, Gilberto Menendez, Jose Olivares, Florinda Chavez, Paulita Sanchez, Jo Ann Acevedo, David Lopez, Diana Martinez Alexander, and Jeandra Ortiz.

Plaintiffs allege that the Texas Legislature enacted the redistricting plans with the intent to discriminate against racial minority groups, and all Private Plaintiffs assert that under the totality of circumstances, the challenged redistricting plans deny racial minorities an equal opportunity to participate in the political process and to elect representatives of their choice. To that end, Private Plaintiffs deposed legislators, legislative staff, and other individuals (collectively, the "Legislators") under the protocol set forth in the Court's May 18, 2022 Order and the Stipulated Order Regarding Legislative Deposition Protocol. ROA.24-50449.7513-7518, .12715-12729.

In seeking evidence relevant to their claims that Defendants violated the Voting Rights Act and the 14th Amendment of the U.S. Constitution when they enacted the challenged redistricting plans, Plaintiffs propounded document requests and sought to depose non-party legislators and others. Plaintiffs also sought documents from the State of Texas (the Office of the Attorney General ("OAG")). The third parties and OAG asserted the legislative privilege and, after conferring and attempting to resolve the disagreements over privilege, Plaintiffs moved to compel.

**B. Non-Party Legislators and Others Asserted the Legislative Privilege**

When discovery commenced, Plaintiffs sought production of documents and depositions from parties as well as non-party legislators and other non-parties who

participated in creating the challenged redistricting plans. Several parties and non-parties asserted the legislative privilege.

On May 18, 2022, the district court denied several non-party legislators' motions to quash deposition subpoenas and established procedures to review claims of legislative privilege in depositions. The deponents could invoke the legislative privilege in response to particular questions, but the deponent invoking the privilege would then have to answer the question in full. The response would be subject to the privilege and kept confidential; if a party wanted to use that testimony in the case, the party would have to move to compel the testimony. *See* ROA.24-50449.7513-7518 (Court's May 18, 2022 Order); *see also* ROA.24-50449.12715-12729 (Stipulated Order Regarding Legislative Deposition Protocol).

The non-party legislators appealed and this Court denied their motion for stay pending appeal. *League of United Latin Am. Citizens Abbott v. United States*, No. 22-50407, 2022 WL 2713263 (5th Cir. May 20, 2022). The U.S. Supreme Court subsequently denied the legislators' application for stay. *Guillen v. LULAC*, 142 S. Ct. 2773 (2022).

On July 25, 2022, the district court ordered production of documents by non-party legislators, their staff and a state employee. The non-parties appealed and, on July 18, 2023, this Court vacated and remanded the discovery order in light of *La Union del Pueblo Entero v. Abbott*, 68 F.4th 228, 235 (5th Cir. 2023) ("*Hughes*").

*See League of United Latin Am. Citizens v. Abbott*, No. 22-50662, 2023 WL 4697109 (5th Cir. July 18, 2023).

### C. The discovery at issue in this appeal

#### 1. Motions to Compel Documents

Plaintiffs filed four motions to compel production of documents withheld by legislators, legislative staff, the Lt. Governor and the Office of the Attorney General. *See* ROA.24-50449.15743-15758, .18317-18327, .19282-19298, .20143-20154.

Plaintiffs sought documents from the State of Texas, which for the purposes of the instant suit includes the Office of the Attorney General ("OAG"). ROA.24-50449.7497-7503 (order granting motion to compel). The OAG, an executive agency, withheld documents in connection with redistricting legislation based on the legislative privilege, including 795 documents that legislators or legislative staff never even saw—much less relied on – and thus could not fall within the scope of the legislative privilege. *See* ROA.24-50449.19762-19845. In addition, the vast majority of the documents withheld by the OAG contained fact-based information not protected by the legislative privilege (ROA.24-50449.19848-19926) or were created after the enactment of the challenged redistricting plans (ROA.24-50449.19930). *See* ROA.24-50499.19282-19298. Plaintiffs argued that the legislative privilege was waived for the remaining 19 documents in the OAG's privilege log because each of the purportedly privileged documents has been shared

with OAG, which is part of the executive branch, not the legislative branch. ROA.24-50449.19287-19288.

Plaintiffs also sought documents identified by and in the custody of the Lieutenant Governor of Texas, who, because he is a member of the executive branch, cannot assert the legislative privilege. For this same reason, legislators waived the legislative privilege when they shared information with the Lieutenant Governor. ROA.24-50449.15746-15748.

Plaintiffs sought documents from legislators and legislative staff that contained fact-based information, were exchanged with legislative outsiders (some of whom the privilege log failed to identify) or were created after the enactment of the challenged redistricting plans. *See e.g.,* ROA.24-50449.15749-15750, .20147-20149, .18321. For example, Anna Mackin, a staffer for Senator Joan Huffman, withheld, based on the legislative privilege, documents she shared with an attorney with the Texas Association of Manufacturers, a radio talk show director, and a former staffer of a member of the U.S. House of Representatives, among other legislative outsiders. ROA.24-50449.20147.

Finally, Plaintiffs argued that even if the legislative privilege applied to the documents, it should yield.

### 2. Motions to Compel Deposition Testimony of Legislators and Others

Plaintiffs moved to compel deposition testimony of legislators, staffers and other employees of the Legislature or legislative agencies that were subject to legislative privilege objections.  ROA.24-40449.23800-23924; s*ee also* ECF 543, 555, 602 and 638 (under seal).

In their motions, Plaintiffs argued that the information provided by the testimony was not legislative privileged because it fell outside the scope of the privilege, contained fact-based information, was held by executive branch officials or other third parties, fell outside the time period of enacting the challenged redistricting plans, and/or elicited no privilege information (e.g. testimony such as "I don't know" or "I don't recall").  *See generally* ROA.24-509449.23586.  Plaintiffs also argued that legislators waived the privilege by sharing information with third parties and that even if the legislative privilege applied to the documents, it should yield.  *Id.* at 9-16.  ROA.24-50449.23591-23598.

### 3.  Depositions of NRRT and Adam Kincaid

Plaintiffs sought discovery of the National Republican Redistricting Trust ("NRRT") and Adam Kincaid, the president and executive director of NRRT, after learning that they had provided map-drawing services to the lobbyist for the Texas Republican congressional delegation's lobbyist.  *See In re Kincaid*, No. 21CV259DCGJESJVB, 2023 WL 6459801, at *1 (D.D.C. Oct. 4, 2023).

On June 24, 2022, Plaintiffs served a Rule 30(b)(6) deposition subpoena on NRRT and a Rule 30(b)(1) deposition subpoena on Mr. Kincaid. Mr. Kincaid and NRRT moved to quash and for a protective order, and, on October 4, 2023, the U.S. District Court for the District of Columbia denied NRRTS motions. *See In re Kincaid*, No. 21CV259DCGJESJVB, 2023 WL 6459801 (D.D.C. Oct. 4, 2023).

On November 2, 2023, Plaintiffs deposed NRRT and Mr. Kincaid regarding their involvement in 2021 Texas congressional redistricting. Pursuant to the procedures set out in the Court's May 18, 2022 Order, Plaintiffs moved to compel regarding the portions of those depositions to which the Legislators objected and asserted the legislative privilege. *See* ECF 742 (LULAC Plaintiffs' Opposed Motion to Compel Portions of the National Republican Redistricting Trust and Adam Kincaid's Depositions That Are Subject to Legislative Privilege Objections) (under seal); ROA.24-50449.7513-7518 (Order setting procedures).

In their motion, Plaintiffs sought to compel portions of the NRRT and Adam Kincaid depositions that related to testimony already provided, without objection, by another witness in the case. *See* column D at 6-9, 11-18, 20-26, 28-29; ROA.24-50449.24254-24257, .24259-24266, .24268-24274, .24276-24277. Plaintiffs also sought to compel portions of the NRRT and Adam Kincaid depositions that related to: communications that did not involve legislators or legislative employees; fact based information; questions that elicited no privileged information; publicly

disclosed information; information for which the legislative privilege was waived because the information was shared with legislative outsiders. *Id.* Plaintiffs also argued that even if the legislative privilege applied to the documents, it should yield.

For example, Adam Kincaid and NRRT worked for an individual who himself was employed by members of the Texas Republican congressional delegation to lobby the Texas Legislature on the congressional redistricting plan. *See e.g.*, ROA.24-50449.24260, .24262. Nevertheless, legislators asserted the legislative privilege over communications between Mr. Kincaid and Mr. Gober in which no legislator/legislative employee participated or was even present. *See* ROA.24-50449.24262. Similarly, the legislators asserted the legislative privilege with respect to testimony by Mr. Kincaid regarding Mr. Gober's instructions to him in crafting the Republican congressional delegation's proposed redistricting plan, as well as Mr. Kincaid's review of legislative amendments to see if they met policy preferences set by the Republican delegation. *Id.*; *see also id.* at .24274. With respect to purely fact-based information, for example legislators asserted the legislative privilege with respect to testimony regarding whether NRRT had created a "change report" on the enacted redistricting plan. ROA.24-50449.24278.

### 4. The district court's orders denying discovery

On December 21, 2023, the district court granted in part and denied in part Plaintiffs' motions to compel legislative deposition testimony and to compel document production from legislators and the OAG. ROA24.50449.23585-23942.[2]

**December 21, 2023 Order**

In its December 21, 2023 order, the district court granted in part and denied in part Plaintiffs' motions to compel documents from legislators and a legislative staffer. ROA.24-50449.23583-23942. The district court granted in part and denied in part Plaintiffs' motions to unseal portions of the depositions of: third party legislators, legislative staffers, a legislative consultant, the House Parliamentarian, the Executive Director of the Texas Legislative Council and a legislative outsider who lobbied on the congressional plan. ROA.24-50449.23583-23942. The district court denied Plaintiffs' motions to compel documents from the State of Texas (Office of the Attorney General).

Rejecting the holding of *Jefferson* that "the legislative privilege for state lawmakers is, at best, one which is qualified[,]" 849 F.3d 615, 624 (5th Cir. 2017), the district court dramatically expanded the scope of the legislative privilege to include all information that might be "relevant" to proving discriminatory intent. ROA.24-50449.23586 n. 2. The district court created a new standard under which

---

[2] The district court also denied other parties' discovery motions in ROA24-50449.23583-23942 and ROA.24-50449.24249-24278; the other parties did not appeal those rulings.

any evidence of discriminatory racial purpose, by definition, was privileged, explaining: "so long as disclosure of the factual material by the legislator would add a brick to the plaintiffs' wall, it falls within the scope." *Id. See also id.* at .23587-23588 n. 5 ("While we do not adopt a rule which inquires into the intent of the subpoenaing party [to discover evidence of discriminatory motive], our ruling effectively reaches the same result.").

The district court's new legislative privilege standard was unmoored even from other common law privileges. *See id.* at .23586 ("The legislative privilege extends further than either [the deliberative process or attorney client] privilege[.]").

As a result, the district court held that the legislative privilege shielded disclosure of purely factual information, whether or not the legislator reviewed or considered the information, as well as legislator "testimony such as 'I don't know' or 'I don't recall'[.]" *Id.* at 4-5. The district court stretched the legislative privilege to cover even factual information in the custody of third parties, without any requirement to show that the information was shared with the legislator. *See id.* at .23587 ("Just because no one presented that document to a legislator does not mean that no one presented the information *contained* in the document to the legislator.").

The district court further expanded the scope of the legislative privilege by ruling that "executive officers like the Lieutenant Governor or employees of the Office of the Attorney General (OAG) [acted] like legislators' aides" and thus they

may assert the legislative privilege over documents exclusively in their custody. *Id*. at .23688. Even when a legislator never saw a document, the district court concluded that "products of the executive branch" are shielded by the legislative privilege if "the OAG or the Lieutenant Governor obtained or prepared this information to present it to legislators in the legislative process." *Id*.

The district court also "reject[ed] any start date at which the legislative privilege applies[,]" thus extending the legislative privilege over information that predated the proposal of redistricting plans. *Id*. at .23590.

Although it recognized that the legislative privilege "must yield in extraordinary instances [including] where important federal interests are at stake," (*id*. at .23591 (internal citations and quotation marks omitted)), the district court concluded that the legislative privilege does not yield in statewide redistricting cases that assert intentional racial discrimination because legislators' "self-interest in establishing the electoral structure [] cannot justify precluding the application of the legislative privilege." *Id*. at .23592 (citing *Hughes*, 68 F.4th at 237). Again reverse engineering the legislative privilege to fit this case, the district court declared that the legislative privilege will not yield when plaintiffs assert claims of intentional discrimination. *See id.* at .23594 (declaring that for the legislative privilege to yield, "[t]here must be important federal interests at stake beyond a mere constitutional or statutory claim involving racial animus[.]").

14

Finally, the district court ruled that a legislator only waives the legislative privilege over information shared with third parties when the legislator publishes such information publicly. *Id.* at .23594 (citing *Hughes*, 68 F.4th at 236-237). The district court thus limited waiver of the legislative privilege so that legislators can shield information they shared with every third party except individuals who receive information published to the general public. *See also id.* at .23597 ("Only upon a showing of public accessibility has the privilege been waived under *Hughes*.").

As a result, the district court denied disclosure of the vast majority of testimony and documents sought by Plaintiffs. *See id.* at .23600-23942.

**June 3, 2024 Order**

On June 3, 2024, the district court granted in part and denied in part Plaintiffs' motion to unseal portions of deposition testimony given by the NRRT and Adam Kincaid. ROA.24-50449.24249-24278.

In its three-page discussion, the district court incorporated the rulings of its December 12, 2023, discovery order and then concluded that "material that has already been released to the public" is nevertheless shielded by the legislative privilege because it was not published to the entire public. ROA.24-50449.24250. The district court did not address whether the legislators had waived the legislative privilege for testimony of Mr. Kincaid and NRRT where legislators had not objected to that same testimony in the earlier deposition of another witness.

### 5. Appeal

Plaintiffs filed their notice of appeal of the district court's December 21, 2023, discovery order on February 20, 2024. ROA.24-50449.23962-23963. Plaintiffs filed their notice of appeal of the district court's June 3, 2024 discovery order on June 4, 2024. ROA.24-50449.24293-24294.

## SUMMARY OF THE ARGUMENT

Texas has discriminated against minority voters and been forced to revise one or more of its statewide redistricting plans in each of the past four decennial redistricting cycles. The history of Texas redistricting includes maps that either deprive minorities of voting opportunities in a fair number of districts or racially gerrymander minority voters into districts that minimize their electoral strength. Judicial findings of discriminatory racial intent frequently relied on evidence from the legislative process.

In the decision below, the district court defined the scope of the legislative privilege to bar discovery of exactly the information that has led to findings of intentional racial discrimination in past cases. In its ruling, the district court erred as a matter of law by expanding the scope of the legislative privilege without respect to the claims in the case, the custodian of the information, or whether a legislator had seen the information.

The legislative privilege "must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." *Jefferson Cmty. Health Care Centers, Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017). The decision below erroneously expanded the scope of the legislative privilege to encompass documents never shared with or seen by legislators or legislative staff, and ruled that the executive branch custodians of these documents, as well as lobbyist custodians could assert the legislative privilege.

The district court further erred by expanding the scope of the legislative privilege to encompass fact-based information, information provided to legislative outsiders, and information that falls outside the period of enactment of the challenged redistricting plans.

The district court also erred in ruling that the legislative privilege was not waived with respect to the discovery sought by plaintiffs, and adopted a completely new test for waiver that requires a legislator not only to share information with an individual outside the legislative process but requires a legislator to share information with the public at large.

Finally, the district court erred in ruling that the legislative privilege does not yield, despite the importance of the issues in this case and the fact that there are few

systemic checks on lawmakers when they draw the boundaries of their election districts. The district court's adoption of a test that specifically excludes redistricting civil rights cases from the type of case that warrants waiver was further error.

## **ARGUMENT**

### I.     **Standard of Review**

In reviewing a district court's discovery orders, "[t]he district court's legal conclusions should be reviewed de novo, and its factual findings should not be disturbed unless they are clearly erroneous." *La Union del Pueblo Entero v. Abbott*, 93 F.4th 310, 321 (5th Cir. 2024) (citing *La Union del Pueblo Entero v. Abbott*, 68 F.4th 228, 235 (5th Cir. 2023) ("*Hughes*"))

### II.    **Redistricting Cases and the Role of Evidence From the Legislative Process**

Texas has a long history of discrimination against Latino voters, including in the area of redistricting. *See LULAC v. Perry*, 548 U.S. 399, 439 (2006); *see also Bush v. Vera*, 517 U.S. 952, 981 (1994); *Perez v. Abbott*, 253 F. Supp. 3d 864, 888 (W.D. Tex. 2017); *Abbott v. Perez*, 585 U.S. 579, 620-622 (2018). In every redistricting cycle from 1970 through 2010, Texas discriminated against Latino voters in violation of the Voting Rights Act of 1965. *Texas v. United States*, 887 F. Supp. 2d 133, 161 (D.D.C. 2012) ("In the last four decades, Texas has found itself

in court every redistricting cycle, and each time it has lost.), *vacated and remanded*, 570 U.S. 928 (2013);[1] *Perez*, 253 F. Supp. 3d at 888.

The district court below noted that "[t]he recent history [of Texas redistricting] is suggestive of discriminatory intent; Texas has a long history of losing redistricting cases[.]" ROA.24-50449.7065.  In these past redistricting cases, courts frequently found evidence of intentional racial discrimination in the development of the maps.  For example, courts examined the type of software used by mapdrawers, the data in that software, and communications of legislators with outsiders.

In 2018, following a re-redistricting of the Texas State House, the U.S. Supreme Court held that Texas racially gerrymandered Latino voters. The majority of evidence of mappers' predominant use of race came from the mapping process itself.  *See Perez v. Abbott*, 267 F. Supp. 3d 750, 789 (W.D. Tex. 2017) (mapdrawer "quickly began trading populations at the block level, using racial shading and HVAP as a proxy for SSVR [and] never considered election or political data outside of SSVR."), *aff'd in relevant part, rev'd in part and remanded*, 585 U.S. 579, 621 (2018) ("Texas has pointed to no actual 'legislative inquiry' that would establish the need for its manipulation of the racial makeup of the district.").

Earlier in the litigation, the district court examined communications, including an email and draft maps, between a Texas legislative staffer and an outsider lobbying on behalf of members of Congress to conclude:

to protect an incumbent who was not the choice of the Latino majority in the district and who they knew would likely be ousted in the next election by those Latino voters, mapdrawers intended to decrease and successfully decreased the performance of CD23 for minority-preferred candidates. . . . Because mapdrawers had the intent to provide Hispanic voters less opportunity to participate in the political process and elect their candidates of choice, and they effectuated that intent in CD23, CD23 violates § 2 in both intent and in effect.

*Perez v. Abbott*, 253 F. Supp. 3d 864, 886, 890 (W.D. Tex. 2017); *see also id.* at 950, 954 (discussing communications).

The *Perez* district court also looked at the sequence of draft maps to conclude that "mapdrawers started out with the district they wanted to avoid, and then carved it up into pieces[.]" Perez *v. Abbott*, 253 F. Supp. 3d 864, 954 (W.D. Tex. 2017) (discussing intentional discrimination in Dallas-Ft. Worth).

The U.S. District Court for the District of Columbia also concluded that in 2011 Texas had discriminated against Latino and other minority voters in its redistricting plans. The court looked in part at fact-based evidence, such as a committee chairman sharing draft maps with "at least three senators during this

period, all of them Anglo." *Texas v. United States*, 887 F. Supp. 2d 133, 164 (D.D.C. 2012), *vacated and remanded*, 570 U.S. 928 (2013).[3] The court also looked at communications with non-legislative staff, such as an email from a lawyer for the Texas Legislative Council, a nonpartisan state agency, that warned legislators not to produce a map in the state's computer system if they wanted it to appear that the map was created after, not before, a public hearing. *Id*. at 165; *see also id*. at 177 (expressing concern that the drawing of the State "House Plan showed little attention to, training on, or concern for the VRA.")

As in these other cases, the documents and testimony sought by Plaintiffs here are relevant and vital to Plaintiffs' intentional discrimination claims under the federal Voting Rights Act and the United States Constitution. Information about draft redistricting plans, the data used in drafting those plans, external communications, and other legislative materials shared with third parties bear directly on whether "invidious discriminatory purpose was a motivating factor" in redistricting. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). Such legislative materials also bear on whether "the policy underlying the State's . . . use of the contested practice or structure is tenuous" under the

---

[3] Although the district court opinion was vacated in light of *Shelby County v. Holder*, 570 U.S. 529 (2013), the Fifth Circuit noted that "the opinion was not vacated on the merits and remains factually relevant as a contemporary example of State-sponsored discrimination based on the finding of a three-judge federal court." *Veasey v. Abbott*, 830 F.3d 216, 257 n.54 (5th Cir. 2016) (*en banc*).

discriminatory results test for the challenged redistricting plans. *Thornburg v. Gingles*, 478 U.S. 30, 45 (1986). Thus, the discovery sought by Plaintiffs bears on the evaluation of whether official actors are motivated by a discriminatory purpose, the effect of challenged practices, and the extent to which race played a role in challenged decisions.

## III.  The District Court Erred in Expanding the Scope of the Legislative Privilege

The U.S. Supreme Court long ago rejected the notion that the legislative privilege encompasses "all things in any way related to the legislative process." *United States v. Brewster*, 408 U.S. 501, 516 (1972).  Far from endorsing that the legislative privilege is "all-encompassing," *Gravel v. United States*, 408 U.S. 606, 625 (1972), Supreme Court precedent has long focused on protecting only "inquir[y] into the *motives* of legislators," *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (emphasis added) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951)).

The district court erred as a matter of law by expanding the scope of the legislative privilege without respect to the claims in the case, the custodian of the information, or even whether a legislator had seen the information.  Instead of adhering to the established limits of the legislative privilege, the district court 'reverse engineered' a definition of the legislative privilege that bars discovery in general of any information that might be relevant to a claim of intentional discrimination. *See*

ROA.24-50449.23586 n.2 (expanding the legislative privilege to include all information that might be "relevant" to proving discriminatory intent.); *see also id.* ("[S]o long as disclosure of the factual material by the legislator would add a brick to the plaintiffs' wall, it falls within the scope."), *id.* at .23587-23588 n.5 ("While we do not adopt a rule which inquires into the intent of the subpoenaing party [to discover evidence of discriminatory motive], our ruling effectively reaches the same result."). The district court's expansion of the legislative privilege also specifically bars discovery of the very information that past courts relied upon to conclude that redistricting maps are intentionally discriminatory. *See supra* Section III. above.

## A. The Scope of the Legislative Privilege

Although state legislators enjoy, under federal common law, immunity from suit that is coextensive with that of federal legislators, *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 732 (1980), state legislators' common law evidentiary legislative privilege is narrower in scope than the federal legislative privilege. *See Jefferson Cmty. Health Care Centers, Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017) ("While the common-law legislative immunity for state legislators is absolute, the legislative privilege for state lawmakers is, at best, one which is qualified.") (quoting *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 100 (S.D.N.Y. 2003), aff'd, 293 F. Supp. 2d 302 (S.D.N.Y. 2003); *see also Comm. for a Fair & Balanced Map*, 2011 WL 4837508, at *7; *Nashville Student Org. Comm.*,

123 F. Supp. 3d at 969 ("In cases involving constitutional challenges related to voting rights, the vast majority of federal courts have found that the federal common law also affords state legislators only a qualified (i.e., not absolute) legislative privilege against having to provide records or testimony concerning their legislative activity.") (cleaned up) (citations omitted)).

Read in concert with Supreme Court precedent, *Jefferson* defines a scope of the legislative privilege that protects opinions, motives, recommendations, or advice about legislative decisions. *See Jefferson*, 849 F.3d at 624 ("This privilege 'must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth.'") (cleaned up).

The district court erred when it read the discussion of legislative privilege out of *Jefferson*. ROA.24-50449.23584 ("Because the Fifth Circuit treats the invocation of legislative privilege to bar a claim (*JCHCC*) and its invocation to prevent certain discovery (*Hughes*) as distinct, we do so too."). *Jefferson* addressed the "legislative privilege [as] an evidentiary privilege, 'governed by federal common law, as applied through Rule 501 of the Federal Rules of Evidence.'" *Jefferson*, 849 F.3d at 624 (5th Cir. 2017) (citation omitted). *Jefferson*'s observation that "this evidentiary privilege

cannot bar the adjudication of a claim" does not mean that *Jefferson* does not control analysis of the legislative privilege.  *Id*.

In fact, the district court applied *Jefferson* to reject Texas legislators' attempt to quash deposition subpoenas at an earlier stage of the case, *League of United Latin Am. Citizens v. Abbott*, No. 3:21-CV-00259, 2022 WL 1570858, at *1 (W.D. Tex. May 18, 2022) and this Court denied the legislators' request for a stay.  *League of United Latin Am. Citizens v. United States*, No. 22-50407, 2022 WL 2713263, at *1-2 (May 20, 2022) (decision by King, Higginson, and Willett).

### B.    *Hughes and Bettencourt do not Counsel Otherwise*

Over 50 years ago, faced with the argument that legislative immunity under the Speech and Debate Clause protects "all conduct 'related to the due functioning of the legislative process,'" the Supreme Court emphasized that it had never "in any sense impl[ied] . . . that everything that 'related' to the office of a [legislator] was shielded by the [Speech or Debate] Clause." *United States v. Brewster*, 408 U.S. 501, 513-14 (1972). The Court also noted that it would be neither "sound [nor] wise, simply out of an abundance of caution to doubly insure legislative independence, to extend the privilege beyond its intended scope, its literal language, and its history, to include all things in any way related to the legislative process." *Id.* at 516. The Court then put a finer point on that, stating that the *federal, evidentiary* legislative privilege applies only to "integral part[s] of the deliberative and

communicative processes" and "only when necessary to prevent indirect impairment of such deliberations." *Gravel v. United States*, 408 U.S. 606, 625 (1972). So, for example, "[a] promise to deliver a speech, to vote, or to solicit other votes at some future date is not" protected by the privilege. *United States v. Helstoski*, 442 U.S. 477, 490 (1979). "Likewise, a *promise* to introduce a bill is not a legislative act" protected by the privilege. *Id.* Thus, far from endorsing that the legislative privilege is "all-encompassing," *Gravel*, 408 U.S. at 625, Supreme Court precedent has long focused on protecting legislators from *lawsuits* that "inquire into the motives of legislators," *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951)).

In *Hughes,* individual Texas state legislators appealed a district order directing them to produce documents they had withheld based on the legislative privilege. *Hughes*, 68 F.4th at 231. The Court concluded that the privilege had not been waived for communications with third parties listed in the legislators' privilege log, *id.* at 236, and that the privilege did not yield in that case, *id.* at 237. In *Bettencourt*, the Court held that the legislative privilege had not been waived for communications with third parties when those communications are in the custody of third parties. *La Union del Pueblo Entero v. Abbott*, 93 F.4th 310 (5th Cir. 2024) ("*Bettencourt*")

*Bettencourt* and *Hughes* did not—and could not—disturb Supreme Court precedent or this Court's statements in *Jefferson* that the privilege is qualified and must be

26

strictly construed. To the extent that *Bettencourt* and *Hughes* are inconsistent with *Jefferson*, the Court is required to follow *Jefferson*. *See* ROA.24-50449.24141-24156 (dissenting opinion).

### C. The District Court Erred by Expanding the Scope of the Legislative Privilege to Encompass Documents Never Shared with or Seen by Legislators or Legislative Staff

The district court erred when it concluded that even when a legislator never saw a document, "products of the executive branch" are shielded by the legislative privilege if "the OAG or the Lieutenant Governor obtained or prepared this information to present it to legislators in the legislative process." ROA.24-50449.23588. The district court reached this conclusion without requiring the OAG to show that the information was shared with the legislator in another form, explaining instead that "[j]ust because no one presented that document to a legislator does not mean that no one presented the information contained in the document to the legislator." ROA.24-50449.23587. The district court thus radically expanded the scope of the legislative privilege to encompass documents never seen by a legislator, containing information never shared with a legislator.

*Hughes* reinforces Plaintiffs' argument that the 795 documents created by the Office of the Attorney General and never shared with any legislator fall outside the scope of the legislative privilege. *See* ROA.24-50449.19762-19845. As the State's privilege log notes, these documents were "[p]repared internally by in-house OAG

consulting experts at the direction, under the supervision, and for *the sole use of* attorney Chris Hilton." *Id.* (emphasis added). Further, these documents were "provided directly by staff' at OAG "to attorney Chris Hilton and to *no other person* within or outside of [OAG], *not even the client." Id.* (emphasis added). Thus, according to the State's own characterization, no legislator or legislative staffer ever saw –much less relied on -- these documents in the legislative process. Any assertion that these documents are privileged therefore "flouts the rule that the privilege covers *legislators'* actions in the proposal, formulation, and passage of legislation." *Hughes,* 68 F.4th at 236 (emphasis added and quotation omitted). Indeed, because OAG purposely *left out* legislators from review of these documents, these documents necessarily cannot be *"within* the sphere of legislative activity or *within* the regular course of the legislative process" -- and therefore cannot be privileged. *Id.* at 235 (emphases added and quotation omitted).

Regardless of whether the privilege applies to any communications between OAG and legislators, neither in *Hughes* nor *Bettencourt* did the Court endorse the notion that information sequestered from a legislator could fall within the scope of the privilege. Further, these documents cannot reflect instances where legislators "brought third parties *into* the process" because the legislators themselves were *left out* of receiving the information. *Hughes,* 68 F.4th at 237. Indeed, to accept the district court's construction of the privilege would permit evidence, no matter the

degree to which it is removed from the legislator, to remain privileged. Such an expansive scope of the privilege would serve neither of the privilege's purposes as articulated by this Court: respect for the separation of powers or allowing legislators to focus on lawmaking. Accordingly, the legislative privilege cannot shield the 795 documents withheld by OAG.

The district court also erroneously concluded that executive officers "acted as an aide or consultant to the legislator" and thus "properly asserted the [legislative] privilege" in the absence of the legislator asserting the privilege. ROA.24-50449.23588. This is especially true for information created by the OAG and never shared with a legislator. *Id.*

### D. The District Court Erred by Expanding the Scope of the Legislative Privilege to Encompass Fact-Based Information

Fact-based information must be disclosed because it is not an integral part of the deliberative and communicative process and does not in and of itself reflect a legislator's opinions or motives. The legislative privilege therefore does not shield this information and the district court erred when it expanded the scope of the legislative privilege to protect the fact-based information at issue in this case.

Unlike here, in *Hughes*, the parties "agree[d] that the documents [fell] within the privilege's scope[.]" 68 F.4th at 236. Thus, in holding the documents were privileged, the *Hughes* court in no way rejected the notion that fact-based information is exempt from the privilege. Further, requiring the disclosure of fact-

29

based information in no way frustrates the privilege's purposes as articulated by *Hughes*: "separation of powers" and "allowing lawmakers to focus on their jobs[.]" 68 F.4th at 237.

The district court erred when it concluded, with respect to fact-based information, that "[t]he legislative privilege extends further than either [the attorney client or deliberative process] privilege when it comes to bare facts." ROA.24-50449.23586. *In re Sealed Case* does not support the district court's reasoning. 121 F.3d 729 (D.C. Cir. 1997). In that case, which dealt with the deliberative process privilege, the court concluded, as the district court should have here, that "[t]he deliberative process privilege does not shield documents that simply state or explain a decision the government has already made or protect material that is purely factual, unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations." *Id*. at 737.

As a result, the district court erred when it barred from disclosure:

- "testimony or documentation that may indicate the legislator's relative focus on some facts," ROA.24-50449.23586;

- "testimony such as "I don't know" or "I don't recall" is privileged insofar as it indicates that the legislator did not find certain material particularly relevant to the decision-making process, ROA.24-50449.23586; and

-       "material the legislator obtained, or declined to obtain, in the decision-making process is privileged too insofar as it is sought from the legislator." ROA.24-50449.23587.

### E.     The District Court Erred by Expanding the Scope of the Legislative Privilege to Encompass Information provided by or to third parties, including legislative outsiders and members of the executive branch

Although the district court recognized that "[t]he documents sought by plaintiffs which are discoverable from third parties can be sought from those third parties without subjecting legislators to the vicissitudes of motions practice[,]" (ROA.24-50449.23587 n.5) the district court then ruled that the legislative privilege protects exactly that.  For example, the district court erred when it rules that the privilege extends to information in the custody of executive branch officials and far-flung individuals such as the map-drawer for a lobbyist.  *See* ROA.24-50449.23588 ("claims that executive officers like the Lieutenant Governor or employees of the Office of the Attorney General (OAG) did not act like legislators' aides falls [sic] flat.") and ROA.24-50449.24249 (ruling that information given to mapdrawer for lobbyist was privileged because it was not "made publicly available").

### F.     The District Court Erred by Expanding the Scope of the Legislative Privilege to Encompass Information That Falls Outside the Period of Enactment

*Hughes* reinforces that documents and testimony that relate to events that either preceded the release of the Census redistricting data on August 12, 2021, or

followed enactment of the challenged redistricting plans, fall outside of the scope of the legislative privilege. Such information necessarily does not reflect "'actions that occurred within the sphere of legitimate legislative activity or within the regular course of the legislative process" because a redistricting bill could not have been introduced or considered before the release of the Census, and a legislator's thoughts or actions would have no effect on any redistricting legislation after it was sent to the Governor. *See Hughes*, 68 F.4th at 235 (emphases added and quotations omitted).

The district court erred when it "reject[ed] any start date at which the legislative privilege applies" and instead adopted a circular test under which any communication about redistricting, even before the legislature takes up redistricting, is "an in-scope communication – regardless of any proposal." ROA.24-50449.23590. The district court similarly erred when it extended the legislative privilege to information after the enactment of the challenged redistricting plans, when, by definition, the legislative process has concluded. ROA.24-50449.23590-23591.

## IV. The District Court Erred in Ruling that the Legislative Privilege was not Waived

The district court erroneously relied on *Hughes* to rule that the only time a legislator waives the legislative privilege by sharing information with a third party is when "the legislator made the relevant information publicly accessible." ROA.24-50449.23596. *Hughes* makes no such ruling, and recognizes that a legislator can

waive the legislative privilege by sending information to "third parties *outside* the legislative process . . ." *Hughes* at 237.

The district court thus erred in ruling that the legislative privilege is not waived by sharing information with one person outside the legislative process, and requiring instead that the legislator share the information with *everyone* outside the legislative process. ROA.24-50449.23596; *see also id.* at .23597 (basing the legislative privilege on the "extent of the general public's access to this information . . .")

Even when the district court recognized that the legislative privilege is waived through partial public disclosure, the district court erroneously refused to apply this rule to the documents and deposition testimony in which legislators revealed only some information about their map-drawing process. As a result, although legislators claimed publicly to have engaged in a "race blind" drawing process, and relied on certain data but not other data, and confirmed the compliance of their maps with the requirements of the Voting Rights Act, the district court denied Plaintiffs the opportunity to seek any more information about this partial testimony, which waived the legislative privilege. *See, e.g.*, *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("[T]he attorney-client privilege cannot at once be used as a shield and a sword."); *see also Indus. Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co.*, 953 F.2d 1004, 1007 (5th Cir. 1992) (""[d]isclosure of any

significant portion of a confidential communication waives the privilege as to the whole.") (quoting *United States v. El Paso Co.*, 682 F.2d 530, 538 (5th Cir. 1982)).

As the district court recognized, but refused to follow, "Although *Browning* and *Bilzerian* were referring to the attorney-client privilege, the rationale for expanding the scope of the waiver in this way extends to the legislative privilege as well."  ROA.24-50449.23597.

The district court also erred in failing to consider whether legislators waived the legislative privilege with respect to those portions of the NRRT and Adam Kincaid depositions that related to testimony already provided, without objection, by another witness in the case.  *See* column D at 6-9, 11-18, 20-26, 28-29; ROA.24-50449.24254-24257, .24259-24266, .24268-24274, .24276-24277.

## V.    The District Court Erred in Ruling That the Legislative Privilege Does not Yield

As the U.S. Supreme Court has emphasized, "[l]egislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for *their private indulgence* but for the public good." *Tenney,* 341 U.S. at 377 (emphasis added). Indeed, "[t]he immunities of the Speech or Debate Clause were not written into the Constitution simply for the personal or private benefit of Members of Congress, but to protect the integrity of the legislative process by insuring the independence of individual legislators.'" *United States v. Brewster,* 408 U.S. 501, 507 (1972). However, "[m]alfunction occurs" in the legislative process "when the *process* is

undeserving of trust," such as when, "though no one is admittedly denied a voice or a vote, representatives beholden to an effective majority are systematically disadvantaging some minority out of simple hostility or a prejudiced refusal to recognize commonalities of interest, and thereby denying that minority the protection afforded other groups by a representative system." John Hart Ely, Democracy and Distrust: A Theory of Judicial Review 113 (1980).

Because "[r]edistricting involves the establishment of the electoral structure by which the legislative body becomes duly constituted," it "directly involves the self-interest of the legislators themselves." *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 304 (D. Md. 1992). And so, "the natural corrective mechanisms built into our republican system of government offer little check upon the very real threat of legislative self-entrenchment[.]" *Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 337 (E.D. Va. 2015).

Where, as in discriminatory redistricting, there is a fundamental malfunction in the legislative process --that is, where legislators have used their office for personal or private benefit instead of the public good -- the legislative privilege should yield.

Indeed, in those instances, "unblocking stoppages in the democratic process is what judicial review ought preeminently to be about[.]" Ely, *supra* at 117. "Thus, the judiciary' s unique ability to police the redistricting process warrants ensuring

that it has as much information as possible to help make the difficult determinations about which :redistricting plans are legitimate and which are not." Christopher Asta, *Developing A Speech or Debate Clause Framework for Redistricting Litigation,* 89 N.Y.U. L. Rev. 238, 265 (2014). "In such cases, the benefit that 'the People' are supposed to derive from protecting the legislative process disappears and there is arguably no reason why the courts should privilege legislators' time." *Id.* at 264. And so, in the face of Plaintiffs' allegation of "legislative self-entrenchment," the district court was "presented with just such an 'extraordinary instance.'" *Bethune-Hill,* 114 F. Supp. 3d at 337 (quotation omitted); *see also Citizens Union of City of New York v. Attorney Gen. of New York,* 269 F. Supp. 3d 124, 168-69; *Marylanders for Fair Representation, Inc.,* 144 F.R.D. at 304; *League of Women Voters v. Lee,* 340 F.R.D. 446, 458 (N.D. Fla. 2021).

The district court erred in concluding that the legislative privilege did not yield in lawsuits such as this which challenge statewide legislative redistricting as having been enacted with the intent of or with the effect of discriminating on the basis of race.

At the preliminary injunction stage, the district court concluded that Texas's long history of discrimination in redistricting, as well as the racially discriminatory effect of the challenged redistricting plan, weighed in favor of the plaintiffs challenging the configuration of Senate District 10. Although it concluded that the

plaintiffs had not presented sufficient evidence of racially discriminatory intent, the

district court acknowledged:hughes

> The Court reiterates the context in which this finding is made. The
> Court is not making a final determination on the merits, but, instead, is
> assessing whether Plaintiffs are *likely* to prevail based on the evidence
> presented so far. The Court is well aware that extensive discovery is
> underway in preparation for the trial scheduled for this September. The
> Court does not foreclose the possibility that new evidence and more
> complete presentations will result in different findings after trial.

ROA.24-50449.7067.

Under these circumstances, and in light of the important claims in the case, it

was error for the district court to conclude that the legislative privilege should not

yield. See also *In re Landry,* 83 F.4th 300, 307 (5th Cir. 2023); *see also id.* at 308

(Ho., J. concurring) (weighing the necessity of intervening in a remedial proceeding

and observing "[r]edistricting litigation…is not ordinary litigation.").

The district court erred when it concluded that *Hughes* forecloses the argument that

redistricting is not an extraordinary civil case. ROA.24-50449.23592 ("If a

legislator's self-interest in determining the composition of the electorate was not

enough to make the case "extraordinary" in *Hughes*, then his or her self-interest in

establishing the electoral structure likewise cannot justify precluding the application

of the legislative privilege."). Although *Hughes* dealt with voting rights, and

specifically a law that plaintiffs alleged made voting more difficult, the impact on

the legislators who enacted it was not the type of direct impact of redistricting, where

legislators are defining their own electorates by drawing the boundaries of election districts.

The district court "distill[ed]" a three factor test that is not only erroneous, it excludes this very case:

> (1) There must be important federal interests at stake beyond a mere constitutional or statutory claim involving racial animus, (2) the suit must be more like a federal criminal prosecution than a private plaintiff seeking to enforce his own rights, and (3) it cannot be the type of suit brought so easily that it would effectively destroy the privilege.

ROA.24-50449.23594.

As to factor 1, the district court erred by carving out race discrimination cases from important federal interests. As to factor 2, the district court erroneously elevated federal criminal prosecutions over civil enforcement of statutory and constitutional civil rights. Finally, the district court erred in classifying this lawsuit as one "brought so easily", without evaluating the frequency and resource demands of statewide redistricting litigation.

## **CONCLUSION**

Appellants respectfully request that the Court reverse the District Court's legislative privilege orders (ROA.24-50449.23583-23600, .24249-24278) and remand for reconsideration of the legislative privilege rulings.

Dated: August 27, 2024

Respectfully submitted,

*/s/ Nina Perales*
Nina Perales
Mexican American Legal
Defense and Educational Fund
110 Broadway, Suite 300
San Antonio, TX 78205
(210) 224-5476
nperales@maldef.org

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*/s/ Nina Perales*
Nina Perales

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains __8,568__ words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been

prepared in a proportionally spaced typeface (14-point Times New Roman font) using Microsoft Word (the same program used to calculate the word count).

/s/ Nina Perales
Nina Perales